IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2018

## GEORGE TIMMONS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 278497     Tom Greenholtz, Judge**

_____

### No. E2017-00335-CCA-R3-PC

_____

The Petitioner, George Timmons, appeals from the Hamilton County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that trial counsel was ineffective (1) for failing to present a defense based on the Petitioner's "mental instability"; and (2) for failing to properly advise the Petitioner that he would be sentenced as a repeat violent offender to life without the possibility of parole upon his conviction at trial. Discerning no error, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Donna Miller, Chattanooga, Tennessee, for the appellant, George Timmons.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; M. Neal Pinkston, District Attorney General; and Bates W. Bryan, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

The Petitioner was indicted for aggravated domestic assault and four counts of aggravated rape. State v. George Timmons, No. E2008-01628-CCA-R3-CD, 2009 WL 4790065, at *3 (Tenn. Crim. App. Dec. 14, 2009), perm. app. denied (Tenn. Oct. 16, 2014). Following a jury trial, the Petitioner was convicted of aggravated domestic assault and the lesser-included offenses of aggravated sexual battery, misdemeanor assault, and two counts of rape. Id. The Petitioner "received an effective sentence of life without

parole as a multiple rapist" pursuant to Tennessee Code Annotated section 40-35-120. Id. at *1.

The Petitioner and the victim were both homeless and "living in a wooded area of Chattanooga in a lean-to-tent." Timmons, 2009 WL 4790065, at *1. The victim testified at trial that the Petitioner "had beaten and raped her" during the early morning hours of July 4, 2004. Id. The victim described the Petitioner's beating her "with his fists" and "a big branch from a tree." Id. The Petitioner also choked the victim before ordering her to take off her clothes. Id. The Petitioner then "'jammed his whole fist up [her] vagina,' ordered her to perform oral sex on him, raped her vaginally with his penis, and ordered her to perform oral sex on him again before passing out." Id. (alteration in original).

The victim was able to flee and get help after the Petitioner passed out. Timmons, 2009 WL 4790065, at *1. As a result of the attack, the victim was hospitalized for four days and suffered "three cracked ribs, a broken nose, retinal damage[,] and a neck injury." Id. "Photographs documenting the extensive bruising to the victim's face, torso, and legs were admitted at trial." Id. at *2. The responding officer recalled that "the victim had 'stripes on her skin' that could have been from being beaten with a stick." Id. The nurse who examined the victim recalled that "the vaginal examination was very painful for the victim because there was a lot of bruising along her pubic area." Id. During subsequent forensic testing, the Petitioner's "DNA was found from sperm recovered from the vaginal swabs" taken during the nurse's examination. Id.

This court affirmed the Petitioner's convictions and sentences on direct appeal. Timmons, 2009 WL 4790065, at *1. On December 6, 2010, the Petitioner filed a timely pro se petition for post-conviction relief.[1] The Petitioner was granted a delayed appeal to our supreme court, and his other post-conviction claims were held in abeyance. On October 16, 2014, our supreme court declined to review this court's decision on direct appeal. On June 30, 2016, an amended petition was filed on the Petitioner's behalf. As pertinent to our review, the amended petition alleged that trial counsel was ineffective for failing to present a defense based on the Petitioner's "mental instability" and for failing to object to the trial court's finding that the Petitioner was a repeat violent offender.

At the post-conviction hearing, the Petitioner maintained that he "didn't do what they say [he] did" and that the victim "hurt her own self" when she fell "in the bushes." The Petitioner claimed that trial counsel "didn't represent [him] properly" and that trial counsel "went along with whatever they said and . . . just didn't help [him] any." The Petitioner testified that he rejected a plea agreement offer of twelve years from the State and went to trial because he "wasn't guilty." However, the Petitioner claimed that trial counsel never informed him that he could receive a sentence of life without the

---

[1] This opinion will only address the issue raised in the Petitioner's appellate brief.

possibility of parole and that if he had known he "was going to get life without parole[,] he would have [taken] the twelve years."

The Petitioner claimed that he had "a mental health history" and that he was "getting a [disability] check" at the time of the offenses. When asked for his diagnosis, the Petitioner responded, "Oh, my head. I had a car wreck. It tore a hole in my head." The Petitioner explained that this happened over ten years before the offenses and that he "had a plate [put in] up there." The Petitioner further claimed that he had "a little bit" of a memory problem and that he did not "really recall [himself] raping [any]body [] twice." Additionally, the Petitioner claimed that he had seen a doctor in Alabama and been prescribed medication for these issues, but he did not provide any specific information about these claims. The Petitioner concluded that trial counsel "should have give[n] [him] a mental evaluation or something" because he did not do anything.

Trial counsel testified that the Petitioner claimed that someone else had attacked the victim. Trial counsel recalled that the fact that the Petitioner's sperm was found in the victim's vagina was very damaging to this claim. Trial counsel believed that the State's offer of twelve years was a good offer. However, the victim had failed to show up to court twice before, and "there was a good chance if she didn't show up again that they [would] dismiss it." Despite this, trial counsel testified that he explained to the Petitioner that if the victim "did show, if she testified, he'd be spending the rest of his life in jail." Trial counsel further testified that the Petitioner "understood that and determined that he wished to go forward with the trial." Trial counsel reiterated that he explained to the Petitioner that he faced a sentence of life without the possibility of parole and that the Petitioner knew "the consequences if he went to trial and lost."

Trial counsel testified that the evidentiary hearing was the "first [he had] heard that [the Petitioner] had any mental health issues." Trial counsel explained that, generally, he needed to "see something from the defendant" to suggest pursuing a mental health defense would not be frivolous. Trial counsel testified that he "saw nothing when he reviewed [the Petitioner's] record" to suggest that the Petitioner had been diagnosed with any mental health conditions. Trial counsel also testified that he and the other attorneys who had previously represented the Petitioner had no problems communicating with the Petitioner.

On January 18, 2017, the post-conviction court entered a written order denying the petition. The post-conviction court accredited the testimony of trial counsel over the Petitioner's. Specifically, the trial court accredited trial counsel's testimony that he informed the Petitioner that he faced a sentence of life without the possibility of parole. The post-conviction court also concluded that the Petitioner had failed to establish by clear and convincing evidence that he suffered from a mental health condition; therefore,

-3-

trial counsel was not ineffective for failing to pursue a mental health defense. This timely appeal followed.

## ANALYSIS

The Petitioner contends that he received ineffective assistance of trial counsel. The Petitioner argues that trial counsel was ineffective for failing to pursue a mental health defense. The Petitioner also argues that he rejected the State's twelve-year offer because he "never received service of the State's . . . repeat violent offender notice" and trial counsel never informed him that he would receive a sentence of life without the possibility of parole if he were convicted at trial. The State responds that the post-conviction court did not err in denying the petition.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In reviewing a trial counsel's conduct, we make every effort to "'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Felts v. State, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting Strickland, 466 U.S. at 689).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of

-4-

reasonable professional assistance." Strickland, 466 U.S. at 688-89. "The fact that a particular strategy or tactical decision failed does not by itself establish deficiency." Felts, 354 S.W.3d at 277 (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)). Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Here, the Petitioner failed to establish his factual allegations by clear and convincing evidence. There was no proof that the Petitioner suffered from a mental health condition beyond his own vague testimony which the post-conviction court chose not to accredit. In contrast, trial counsel testified that there was nothing in his interactions with the Petitioner or his review of the Petitioner's record to suggest that the Petitioner had been previously diagnosed with a mental health condition. Additionally, the Petitioner failed "to present the testimony of an expert at the evidentiary hearing to explain what, if any, mental health evidence trial counsel should have advanced at trial." Demario Johnson v. State, No. W2011-02123-CCA-R3-PC, 2013 WL 772795, at *8 (Tenn. Crim. App. Feb. 27, 2013); see Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Accordingly, we conclude that the post-conviction court did not err in denying relief on this issue.

Likewise, the Petitioner failed to establish that he was unaware that he faced a sentence of life without the possibility of parole when he rejected the State's twelve-year offer. The post-conviction court accredited trial counsel's testimony that he explained to the Petitioner that he faced a life sentence without the possibility of parole and that the Petitioner "knew of the consequences if he went to trial and lost." On appeal, the Petitioner complains that he "never [personally] received service of the State's . . . repeat violent offender notice." However, Tennessee Code Annotated section 40-35-120(i)(2) requires that the notice be served on "the [trial] court and the defense counsel," not the defendant. Furthermore, the Petitioner testified that he rejected the State's plea offer and proceeded to trial because he "wasn't guilty." Accordingly, we conclude that the post-conviction court did not err in denying relief on this issue.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE